## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| CHARLES C. HUNDLEY, | CASE NO. 1:20-CV-2803-JRA |
| Petitioner, | JUDGE JOHN R. ADAMS |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| WARDEN DOUGLAS FENDER, | **REPORT AND RECOMMENDATION** |
| Respondent. | |

On December 10, 2020, Petitioner Shawn Gregory Barnard, a prisoner in state custody, filed a *pro se* petition seeking a writ of habeas corpus under 28 U.S.C. § 2254. (ECF #1). On May 12, 2021, Respondent Douglas Fender, in his official capacity as Warden of the Lake Erie Correctional Institution (hereinafter, the State), filed a Return of Writ. (ECF #11). Mr. Hundley did not file a Traverse.

The District Court has jurisdiction over the petition under § 2254(a). On January 3, 2021, pursuant to Local Civil Rule 72.2, this matter was referred to a Magistrate Judge to prepare a Report and Recommendation. (Non-document entry of Jan. 3, 2021). On May 26, 2021, the case was reassigned to me pursuant to General Order 2021-06. (Non-document entry of May 26, 2021).

For the reasons discussed below, I recommend the District Court **DISMISS** as to Grounds Two, Three, and Four, and **DENY** the Petition as to Ground One. I further recommend the District Court **DENY** Mr. Hundley a certificate of appealability.

1

PROCEDURAL HISTORY

**A.      Factual Findings of the Court of Appeals**

The Ohio Court of Appeals, Eighth Appellate District, set forth the facts of this case on direct appeal. These factual findings are presumed correct unless Mr. Hundley rebuts this presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). The Eighth District determined:

[¶ 4] Testimony established that on December 31, 2016, Deonte Dudley ("Dudley") and Dudley's girlfriend Kelasha Bedell ("Bedell") hosted a party at their home in Maple Heights, Ohio. A number of the couple's friends and family members were present. Hundley, Dudley's stepbrother, arrived at the party with his girlfriend Shakira Jones, her daughter Sequoia Jones, and the daughter's boyfriend William Taylor ("Taylor"). At midnight, a number of individuals were shooting guns outside. An hour or two later, a group of attendees were in the basement dancing, talking, and drinking when an altercation occurred, culminating in the shooting death of G. Clark, the brother of Bedell.

[¶ 5] The state presented 17 witnesses. Bedell's daughter, 11-year-old D.G., was in the basement and heard her uncle Marion Clark ("M. Clark") speak to Taylor about dancing too closely with one of D.G.'s minor cousins, M.K. Taylor responded by pushing M. Clark. Hundley and others restrained the parties. D.G. pulled Hundley away from M. Clark as D.G.'s mother, Bedell, and uncle G. Clark entered the basement.

[¶ 6] Bedell, Dudley, and G. Clark were trying to separate M. Clark and Taylor when Hundley pulled a 9 mm Smith & Wesson gun from his waistband and fired at the center of the group. D.G. saw G. Clark drop to the floor. She and the other children ran to the second floor bedroom area until police arrived. D.G.'s 14-year-old cousin S.D. also observed Hundley shoot G. Clark and confirmed D.G.'s testimony.

[¶ 7] Hundley's brother Dudley testified that Taylor pushed M. Clark. Dudley was standing between them when Bedell and G. Clark ran downstairs. Dudley heard a shot and saw G. Clark lying on the floor. He did not see Hundley's involvement with the altercation or see Hundley with a gun that night.

[¶ 8] Bedell heard a commotion and ran to the basement followed by G. Clark to find Dudley separating M. Clark and Taylor. She saw Hundley standing near the

2

children when he "stepped back," pulled out a gun, and fired "for no reason at all," striking G. Clark in the head.

[¶ 9] Bedell pushed her eight-year-old into the adjacent room and returned to see the gun either on the couch or floor. She slid the gun under the couch so that nobody else would get hurt and later informed police of the location of the firearm.

[¶ 10] Sergeant Matthew Berger ("Sgt. Berger") with the Maple Heights Police Department interviewed witnesses at the scene. Hundley told Sgt. Berger that he was in the kitchen when the shot was fired. After interviewing D.G. and other minors who were present during the shooting, Sgt. Berger questioned Hundley again. This time Hundley said that he went to the basement because his brother was fighting with another male and did not mention hearing a shot.

[¶ 11] Detective Thomas Halley ("Det. Halley") and Detective Andrew Sperie ("Det. Sperie") with the Maple Heights Police Department ("MHPD") responded to the scene. Multiple shell casings were located around the property including several 9 mm Hornady brand casings. Det. Sperie found the Smith & Wesson under the couch with the assistance of Bedell, along with a brass shell casing.

[¶ 12] While police were questioning the adults on the lower levels of the home, D.G. informed the police that an adult male with a gun was hiding on the second floor. The male was identified as Jeffrey Jefferson ("Jefferson"), a friend of Hundley. A black .38 caliber revolver was hidden under a towel in one of the children's bedrooms.

[¶ 13] Forensic examinations of the black revolver, Smith & Wesson, Smith & Wesson magazine and bullet casings were conducted. The DNA samples provided for analysis included DNA from Hundley and Jefferson. Due to the mixtures of DNA profiles on the firearms, the DNA results were inconclusive. A sample from the blood stain on the basement floor was sourced solely to G. Clark as well as a sample from the lower grip of the Smith & Wesson.

[¶ 14] The Smith & Wesson weapon was determined to be operable. The 9 mm Hornady brand cartridge casing recovered from the basement floor, as well as several casings recovered outside of the house, were fired from the Smith & Wesson; however, the forensic examination did not absolutely confirm that the bullet that killed G. Clark was fired from the Smith & Wesson.

[¶ 15] Joseph Felo, D.O. ("Dr. Felo"), chief deputy medical examiner for the Cuyahoga County Coroner's Office, testified that the bullet entered the left frontal scalp of G. Clark. Two large and two small fragments of the jacketed bullet were recovered from his body. Based on the measurements of the fragments, the bullet appeared to be of medium caliber, such as a .38 caliber, .357 caliber or 9 mm.

*State v. Hundley*, No. 106235, 2018 WL 4236678, *1-4 (Ohio Ct. App. Sept. 6, 2018) ("*Hundley I*").

**B.    State Court Conviction and Sentence**

On January 20, 2017, a Cuyahoga County Grand Jury indicted Mr. Hundley on the following offenses:

1.    Murder, an unclassified felony, in violation of Ohio Revised Code § 2903.02(A); with one-year and three-year firearm specifications per §§ 2941.141(A) and 2941.145(A), respectively; and forfeiture of a weapon under § 2941.1417(A);

2.    Murder, an unclassified felony, in violation of Ohio Revised Code § 2903.02(B); with one-year and three-year firearm specifications per §§ 2941.141(A) and 2941.145(A), respectively; and forfeiture of a weapon under § 2941.1417(A);

3.    Felonious Assault, a second-degree felony, in violation of Ohio Revised Code § 2903.11(A)(1); with a repeat violent offender specification under § 2941.149(A); one-year and three-year firearm specifications per §§ 2941.141(A) and 2941.145(A), respectively; and forfeiture of a weapon under § 2941.1417(A);

4.    Felonious Assault, a second-degree felony, in violation of Ohio Revised Code § 2903.11(A)(2); with a repeat violent offender specification under § 2941.149(A); with one-year and three-year firearm specifications per §§ 2941.141(A) and 2941.145(A), respectively; and forfeiture of a weapon under § 2941.1417(A);

5.    Involuntary Manslaughter, a first-degree felony, in violation of Ohio Revised Code § 2903.04(A); with a repeat violent offender specification under § 2941.149(A); with one-year and three-year firearm specifications per §§ 2941.141(A) and 2941.145(A), respectively; and forfeiture of a weapon under § 2941.1417(A);

6.    Having Weapons under Disability, a third-degree felony, in violation of Ohio Revised Code § 2923.13(A)(2); with forfeiture of a weapon while under disability under of § 2941.1417(A); and

7.    Receiving Stolen Properly, a fourth-degree felony, in violation of Ohio Revised Code § 2913.51(A); with forfeiture of a weapon under § 2941.1417(A).

(ECF #11-1 at PageID 75-81). The alleged offense conduct occurred on or about January 1, 2017 and involved Mr. Hundley causing harm or death to Gregory L. Clark with a firearm identified as a Smith and Wesson 9mm caliber, Model 5943, Serial #TFK5122. (*Id.*).

Mr. Hundley pled not guilty on January 25, 2017. (*Id.* at PageID 82). On June 28, 2017, he waived a jury trial and elected to proceed with a bench trial. (*Id* at PageID 83-84). Mr. Hundley testified on his own behalf. (ECF #11-7, PageID 1318-88).

During trial, Mr. Hundley moved for acquittal on all counts pursuant to Rule 29 of the Ohio Rules of Criminal Procedure. (*Id.* at PageID 1239-1394). The State moved to dismiss Count Seven, with prejudice, which Mr. Hundley did not oppose and the trial court granted. (*Id.* at PageID 850-52). The court denied the Rule 29 motion as to all other counts. (*Id.* at PageID 1239-1394). On July 25, 2017, the trial court adjudged Mr. Hundley guilty of all remaining counts. (ECF #11-1, PageID 85-86).

At sentencing, the court found Counts One through Five to be allied offenses of similar import; the State elected to proceed to sentencing on Count One. (*Id.* at PageID 85). Mr. Hundley was therefore sentenced on Counts One and Six only. (*Id.*). Mr. Hundley received an indeterminate sentence of 15 years to life on Count One; 3 years for the attendant firearm specifications, served consecutively and prior to Count One; and 24 months on Count Six, served consecutively and prior to the 3-year sentence and the indefinite sentence. (*Id.* at PageID 88-89).

**C.** **Direct Appeal**

On September 8, 2017, Mr. Hundley filed a Notice of Appeal in the Eighth District. (ECF #11-1, PageID 92). His appeal presented three assignments of error:

I.     The trial court violated Mr. Hundley's right to remain silent under the fifth
       amendment to the United States Constitution and Article 1 Section 10 of
       the Ohio constitution by permitting the state to reference his pre-arrest
       silence as substantive evidence of guilt;

II.    The trial court erred by finding the defendant guilty against the manifest
       weight of the evidence; and,

III.   Appellant was denied the effective assistance of counsel in his trial.

(*Id.* at PageID 106). On September 6, 2018, the Eighth District affirmed the trial court's judgment.

(*Id.* at PageID 171-90; *see also Hundley I*, 2018 WL 4236678).

Mr. Hundley timely filed a notice of appeal to the Supreme Court of Ohio on October 22,

2018. (ECF #11-1, PageID 191-92). His memorandum in support of jurisdiction presented a single

proposition of law, as follows:

It is a violation of an accused's right to remain silent under the Fifth Amendment
to the U.S. Constitution as well as Article 1 Section 10 of the Ohio Constitution
for the State to use one's pre-arrest silence as substantive evidence of guilt.

(*Id.* at PageID 194). On January 23, 2019, the Supreme Court of Ohio declined jurisdiction. (*Id.* at

PageID 238; *see also State v. Hundley*, 114 N.E.3d 1207 (Ohio 2019) (table)). On April 3, 2019, the

Supreme Court of Ohio denied Mr. Hundley's motion for reconsideration. (*Id.* at PageID 245; *see

also State v. Hundley*, 120 N.E.3d 32 (Ohio 2019) (table)).

**D.     Post-Conviction Relief**

On December 4, 2018, Mr. Hundley filed an untimely Ohio Criminal Rule 26(B)

application for reopening in the Eighth District, arguing as follows:

Appellant was denied effective assistance of counsel as guaranteed by the Sixth and
Fourteenth Amendments to the United States Constitution and Article I, Section
10 of the Ohio Constitution where his appellate counsel omitted a dead bang
winner, prejudicing appellant to receiving a full review by the court; and appellant
counsel was ineffective and violated the Sixth Amendment when he did not argue
that there was no ballistic evidence done on either firearm.

(*Id.* at PageID 246-58). The State filed a brief in opposition. (*Id.* at PageID 259-63). The Eighth

District denied Mr. Hundley's application on February 8, 2019. (*Id.* at PageID 264-77; *see also State

v. Hundley*, No. 106235, 2019 WL 643562 (Ohio Ct. App. Feb. 8, 2019)).

On February 25, 2019, Mr. Hundley asked the Eighth District to issue findings of fact and

conclusions of law for its denial of his Rule 26(B) motion. (ECF #11, PageID 278-81). On April 1,

2019, the Eighth District denied the motion, stating his petition for postconviction relief was

untimely under Ohio Revised Code § 2953.21(A)(2); moreover, because the petition alleged

ineffective assistance of appellate counsel, it raise a claim not involving the unconstitutional denial

of Mr. Hundley's rights in the trial court. (ECF #11-1, PageID 282).

On August 26, 2019, Mr. Hundley filed a motion for new trial pursuant to Ohio Revised

Code § 2945.79(D) and Criminal Rule 33(A)(1)(4); or, in the alternative, a judgment of acquittal.

(ECF #11-1, PageID 283-92). The trial court denied this motion on October 6, 2019. (*Id.* at

PageID 293).

On October 11, 2019, Mr. Hundley filed a notice of appeal with the Eighth District. (*Id.* at

PageID 294-318). On June 25, 2020, the Eighth District affirmed. (*Id.* at PageID 381; *see also State

v. Hundley*, No. 109150, 2020 WL 3467791 (Ohio Ct. App. June 25, 2020)). Mr. Hundley did not

further appeal this decision.

### FEDERAL HABEAS CORPUS

Mr. Hundley previously filed a federal habeas corpus petition in this Court on June 13,

2019. (ECF #11-1, PageID 358-60). Mr. Hundley moved to hold the petition in abeyance pending

exhaustion of his state court remedies. (*Id.* at PageID 359). This Court denied that request after

determining that Mr. Hundley's petition failed to comply with Habeas Rule 2(c) and was too

deficient to determine the nature of his habeas claims. The Court dismissed Mr. Hundley's petition without prejudice to refile. (*Id.* at PageID 359-60).

Mr. Hundley filed the current petition on December 10, 2020, asserting the following grounds for relief:

> **Ground One:** Whether the trial court violated Mr. Hundley's right to remain silent under the Fifth Amendment to the United States Constitution by permitting the State to reference his prearrest silence as substantive evidence of guilt.
>
> **Ground Two:** Whether the trial court erred by finding Mr. Hundley guilty against the manifest weight of the evidence.
>
> **Ground Three:** Whether the trial court proved its burden of all the elements of murder without sufficient forensic evidence.
>
> **Ground Four:** Whether counsel's deficient performance prejudiced Mr. Hundley's case, without having impeachment evidence such as the police reports, subpoenaing key witnesses on Mr. Hundley's behalf.

(ECF #1 at PageID 5-9) (cleaned up). He requests this Court grant forensic testing on the shells from the 9mm Smith & Wesson and the shells from the .38 black revolver, to prove he did not shoot the victim. (*Id.* at PageID 13). In the alternative, he requests this Court grant a mistrial on the basis of not having the evidence tests and misuse of the evidence by the State, or grant the writ of habeas corpus on the basis of insufficient evidence and hearsay testimony from a non-credible witness. (*Id.*).

Mr. Hundley did not complete the "supporting facts" portion with respect to any of the four grounds. (*See id.* at PageID 5-9). As noted above, he did not file a Traverse.

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs Mr. Hundley's petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA

8

recognizes that "[s]tate courts are adequate forums for the vindication of federal rights" and therefore acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). It "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal citation and quotation omitted). Accordingly, an application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).

Habeas courts review the last explained state-court judgment on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991). For purposes of § 2254(d)(1), clearly established federal law "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). It includes "the holdings, as opposed to dicta, of [Supreme Court] decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

A state court decision is contrary to Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Court on a question of law or if the state court decides a case differently than the Court has decided on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405; *White v. Mitchell*, 431 F.3d 517, 523 (6th Cir. 2005), *cert. denied*, 549 U.S. 1047 (2006). The word "contrary" means "diametrically different, opposite in character or nature, or

mutually opposed." *Williams*, 529 U.S. at 405. A state court does not act contrary to clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent. *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state court decision involves an unreasonable application of the Court's precedent if the state court identifies the correct governing legal rule from the Court's cases but unreasonably applies it to the facts of the state prisoner's case, or if the state court either unreasonably extends a legal principle from the Court's precedent to a new context where it should not be applied or unreasonably refuses to extend that principle in a new context where it should apply. *Williams*, 529 U.S. at 407. The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Id.* at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000), *cert. denied*, 531 U.S. 1089 (2001). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Under § 2254(d)(2), state court factual determinations stand unless they are objectively unreasonable in light of the evidence presented in state court. *Id.* at 100. The Supreme Court has repeatedly emphasized "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion." *Burt*, 571 U.S. at 18.

Under federal law, "a determination of a factual issue made by a State court shall be presumed to be correct. [Petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2554(e)(1). Comity principles also require federal courts to defer to a state's judgment on issues of state substantive and procedural

law. *Murray v. Carrier*, 477 U.S. 478, 491 (1986); *Engle v. Isaac*, 456 U.S. 107, 128-29 (1982). Federal courts must accept a state court's interpretation of its statutes and rules of practice. *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).

The standard is intended to be difficult to meet and reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Harrington*, 562 U.S. at 102-03; *see also Brown v. Davenport*, 142 S. Ct. 1510, 1524 (2022) (describing habeas as an "extraordinary remedy, reserved for only extreme malfunctions in the state criminal justice system and different in kind from providing relief on direct appeal") (cleaned up). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

When a properly presented federal constitutional claim was not adjudicated on the merits in the state courts, the reviewing federal court must apply the pre-AEDPA standard, reviewing *de novo* questions of law and mixed questions of law and fact. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007).

### PROCEDURAL BARRIERS TO FEDERAL HABEAS REVIEW

Before a federal court may review a petitioner's habeas claims on the merits, the petitioner must overcome several procedural barriers. These barriers, including exhaustion of state remedies and procedural default, limit a petitioner's access to review on the merits of a constitutional claim. *Daniels v. United States*, 532 U.S. 374, 381 (2001). Put simply, federal courts may review federal claims that were evaluated on the merits by a state court. Claims there were not evaluated on the

merits, either because they were never presented to the state courts (*i.e.*, they are unexhausted) or because they were not properly presented to the state courts (*i.e.*, they are procedurally defaulted), are generally not cognizable on federal habeas review. *Bonnell v. Mitchel*, 301 F. Supp. 2d 698, 722 (N.D. Ohio 2004).

**Exhaustion of Available State Court Remedies**. A court may not grant a petition for habeas corpus unless it appears the petitioner has exhausted available state court remedies, state corrective process is unavailable, or circumstances exist rendering such state process ineffective to protect the petitioner's rights. 28 U.S.C. § 2254(b)(1). Typically, the exhaustion requirement is satisfied when the petitioner fairly presents all claims to the highest court in the state where petitioner was convicted, giving the state a full and fair opportunity to rule on the petitioner's claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). A claim is fairly presented when both the factual and legal bases for the claim have been introduced to the state courts. *Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2000). A failure to exhaust applies only where state remedies remain "available at the time of the federal petition." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). In contrast, where state court remedies are no longer available, procedural default (discussed more fully below), rather than exhaustion, applies. *Id.*

**Procedural Default**. Absent a petitioner demonstrating either cause and prejudice or that failure to review the claim would result in a fundamental miscarriage of justice (discussed below), a federal court will not consider the merits of procedurally defaulted claims. *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)).

There are two avenues by which a petitioner's claim may be procedurally defaulted. *Id.* First, procedural default occurs if a petitioner "fails to comply with state procedural rules in

presenting his claim to the appropriate state court." *Id.* To determine whether a petitioner's failure to comply with a state procedural rule bars review of his habeas claims, courts in the Sixth Circuit perform a four-pronged analysis: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Second, a claim may be procedurally defaulted when the petitioner fails to raise it in state court and pursue it through the state's "ordinary appellate review procedures." *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). As addressed above, "[i]f, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id.* Although the exhaustion requirement is satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims barring federal court review. *Williams*, 460 F.3d at 806; *Shinn v. Ramirez*, 142 S. Ct. 1718 (2022) ("When [a state prisoner] has failed to [first present that claim to the state court in accordance with state procedures], and the state court would dismiss the claim on that basis, the claim is 'procedurally defaulted.'").

In Ohio, claims must be raised on direct appeal, if possible, or res judicata bars their litigation in subsequent proceedings. *McGuire v. Warden, Chillicothe Corr. Inst.*, 738 F.3d 741, 751 (6th Cir. 2013) (citing *State v. Perry*, 226 N.E.2d 104, 108 (Ohio 1967)). Therefore, a petitioner is not entitled to raise claims in post-conviction proceedings that could have been raised on direct appeal. *Engle,* 456 U.S. at 125 n.28. Consequently, if an Ohio petitioner fails to raise a claim on direct appeal that could have been raised at that time, the claim is procedurally defaulted. *Id.*

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 749. Habeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default; they must present affirmative evidence or argument as to the precise cause and prejudice produced. *See Tinsley v. Million*, 399 F.3d 796, 806 (6th Cir. 2005) (citing *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 452 (6th Cir. 2003) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at a developed argumentation, are deemed waived.") (quotation omitted)). A finding of cause and prejudice does not entitle a petitioner to habeas relief; it only allows a federal court to consider the merits of a claim that otherwise would have been procedurally defaulted. *See Martinez v. Ryan,* 566 U.S. 1, 10 (2012); *see also Coleman*, 501 U.S. at 750.

A showing of cause for the default requires more than the mere proffer of an excuse. Rather, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488; *see also Wogenstahl v. Mitchell*,

14

668 F.3d 307, 321 (6th Cir. 2012). Furthermore, neither a petitioner's pro se status nor his ignorance of the law and procedural filing requirements are enough to establish cause to overcome procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004). Futility cannot constitute cause for the procedural default of a claim for failure to raise a claim on direct review if it means simply that a claim was "unacceptable to that particular court at that particular time." *Engle*, 456 U.S. at 130, n.35. Ineffective assistance of counsel may serve as cause to excuse a procedural default, but the ineffective assistance claim itself must not be procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Attorney error does not constitute "cause" unless it rises to the level of a constitutional violation of the right to counsel under *Strickland*. *Murray*, 477 U.S. at 488.

To demonstrate prejudice sufficient to overcome procedural default, a petitioner must show more than mere errors in the state trial creating a possibility of prejudice; rather, the petitioner must show that the alleged errors worked to the petitioner's actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions. There is no prejudice where the petitioner does not show a reasonable probability of a different verdict. *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003).

Alternatively, a petitioner may overcome procedural default by showing that a fundamental miscarriage of justice will occur if the claims are not considered. *Coleman*, 501 U.S. at 750; *Murray*, 477 U.S. at 495. A fundamental miscarriage of justice occurs in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 495-96; *see also Schlup v. Delo*, 513 U.S. 298, 327 (1995). Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623

(1998). A valid actual innocence claim must be supported by new reliable evidence, such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence, that was not presented at trial and is so strong a court cannot have confidence in the outcome of the petitioner's trial. *Schlup*, 513 U.S. at 324. In other words, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327.

**State Law Claims Not Cognizable on Federal Habeas Review.** The District Court will not have jurisdiction over a petitioner's claims for purposes of habeas corpus review if the claims do not "challenge the legality of his custody" based on a "violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254(a). Indeed, "[t]he writ of habeas corpus is not available to remedy errors of only state law." *Smith v. Morgan*, 371 F. App'x 575, 582 (6th Cir. 2010) (citing 28 U.S.C. § 2254(a)); *see also Norris v. Schotten*, 146 F.3d 314, 328 (6th Cir. 1998) ("A claim based solely on an error of state law is not redressable through the federal habeas process."). Moreover, merely asserting that a state law error violates the Federal Constitution is not sufficient to justify jurisdiction. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010); *see also Rivera v. Illinois*, 556 U.S. 148, 158 (2009) ("The Due Process Clause . . . safeguards not the meticulous observance of state procedural prescriptions, but the fundamental elements of fairness in a criminal trial.") (quotation omitted); *see also Engle*, 456 U.S. at 121 n.21 ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted).

Nonetheless, habeas relief may be available if an alleged error of state law subjected the petitioner to a "fundamentally unfair" criminal process. *Williams*, 460 F.3d at 816. "[T]he category of infractions that violate fundamental fairness is defined very narrowly," and includes only state

16

rulings that "offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Bey v. Bagley*, 500 F.3d 514, 521 (6th Cir. 2007) (cleaned up). "A state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)); *see also Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (stating that a federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure). The habeas petitioner bears the burden of showing "the principle of procedure violated by the rule (and allegedly required by due process)" is fundamental. *Bey*, 500 F.3d at 521.

Discussion and Analysis

## I.      Ground One is Without Merit.

Mr. Hundley's petition frames Ground One as follows: whether the trial court violated his right to remain silent under the Fifth Amendment to the United States Constitution by permitting the State to reference his prearrest silence as substantive evidence of guilt. (ECF #1, PageID 5). He did not submit a Traverse and does not further develop his argument in support.

The State argues the Eighth District "reviewed Ground One on the merits and rejected it." (ECF #11, PageID 59). The State contends that, at the time of the disputed prearrest silence, Mr. Hundley's Fifth Amendment rights were not implicated under *Doyle v. Ohio*, 426 U.S. 610, 619 (1976). (*Id.* at PageID 64). *Doyle* only applies in instances of post-arrest silence where the person has been *Mirandized*; because this dispute centers on Mr. Hundley's pre-arrest, pre-*Miranda* silence, no constitutional error occurred. (*Id.*). Moreover, the Eighth District found that Mr. Hundley had testified during trial, and the questioning at issue occurred during cross-examination and not the

17

State's case-in-chief; as a result, Mr. Hundley had "cast aside his cloak of silence" and the use of pre-arrest silence as impeachment evidence was permitted. (*Id.* at PageID 65). Thus, the Eighth District did not unreasonably apply United States Supreme Court precedent or unreasonably determine the facts, and receives deference on federal habeas review. (*Id.* at PageID 66).

"The Fifth Amendment guarantees an accused the right to remain silent during his criminal trial and prevents the prosecution from commenting on the silence of a defendant who asserts the right." *Jenkins v. Anderson*, 447 U.S. 231, 235 (1980). Due process does not permit the prosecution to call attention to a defendant's silence during trial, because *Miranda* warnings do not extend to a warning to a defendant that "his silence, as well as his words, could be used against him at trial." *Doyle*, 426 U.S. at 619 (quoting *United States v. Hale*, 422 U.S. 171, 182-83 (1975) (White, J., concurring)). Thus, the Supreme Court held "the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving Miranda warnings, violate[s] the Due Process Clause of the Fourteenth Amendment." *Doyle*, 426 U.S. at 619.

At the same time, the Court has "recognized that a defendant who speaks in his own defense cannot avoid testifying fully." *Jenkins*, 447 U.S. at 237 n.3. "It has long been held that a defendant who takes the stand in his own behalf cannot then claim the privilege against cross-examination on matters reasonably related to the subject matter of his direct examination." *Id.* (collecting cases). The Fifth Amendment is not violated where a defendant voluntarily takes the witness stand in his own defense and is impeached with his prior, pre-arrest silence. *Jenkins*, 447 U.S. at 235; *see also Raffel v. United States*, 271 U.S. 494, 496-97 (1926). This is because when a defendant testifies, "he does so as any other witness, and within the limits of the appropriate rules

he may be cross-examined as to the facts in issue" and "may be examined for the purpose of impeaching his credibility." *Raffel*, 271 U.S. at 497 (collecting cases).

Although a defendant's pre-arrest silence may be used as impeachment evidence, *Jenkins*, 447 U.S. at 238, it may not be used as substantive evidence of guilt. *Seymour v. Walker*, 224 F.3d 542, 560 (6th Cir. 2000). Thus, the relevant inquiry here is whether the prosecutor used Mr. Hundley's prearrest silence for impeachment purposes or as substantive evidence of guilt. *See id.*

The Eighth District reviewed the issue on the merits as follows:

[¶ 24] *Doyle v. Ohio*, holds that the state may not seek to "draw an impermissible inference of guilt" from the silence of a defendant who is in custody." "'*Miranda* warnings carry the state's 'implicit assurance' that an arrestee's invocation of the Fifth Amendment right to remain silent will not later be used against him.'"

[¶ 25] The Fifth Amendment is not implicated where prearrest silence is involved because the state has not "'induce[d] a defendant to remain silent.'" The same is true of voluntary statements given after *Miranda* rights are administered, and of post-arrest silence prior to a *Miranda* warning.

[¶ 26] Generally, a defendant's Fifth Amendment rights would be violated by allowing the state to use "pre-arrest silence in the state's case-in-chief [which] would force defendants either to permit the jury to infer guilt from their silence or surrender their right not to testify and take the stand to explain their prior silence."

[¶ 27] Hundley asserts the following exchange violated his Fifth Amendment rights:

> State: You were encountered by several police officers that night on scene, you interacted with a couple of different officers, correct?
>
> Hundley: Just two that I remember.
>
> State: Two, okay. So the first one you were kind of standing with I believe [was] Horace King?
>
> Hundley: My father, my mother, my brother Steve.
>
> State: Steve. And at that point when the officers asked where were you guys when the shooting happened —

19

Hundley: I didn't hear him say that. I think my father and one of them, my father and my brother, one of them responded, said that they were in the kitchen. I never responded because I didn't really hear the question.

State: Well, you had to have assumed what your father or mother or whoever you heard respond, right, you heard them respond, [i]n the kitchen?

Hundley: He didn't directly ask me.

(Tr. 955-956.)

[¶ 28] Hundley moved for a mistrial, arguing that the state was attempting to use Hundley's prearrest silence as substantive evidence of Hundley's guilt. The state responded that Hundley was not under arrest and had not been *Mirandized* so no Fifth Amendment protections were implicated.

[¶ 29] The trial court denied Hundley's motion for a mistrial.

Court: Yeah. All he's asking, to my ear, [counsel], is did you hear the officer say to basically the group, [w]here were you? Part of the group said, we were such and such a place and his question, the essence of it, isn't it true that you heard one or more of your group say, [w]e were in the kitchen, and you didn't chime in to say, [w]ell, I wasn't in the kitchen, I was somewhere else.

(Tr. 956-957).

[¶ 30] Hundley also challenges the use of prearrest statements during closing arguments.

State: * * * but there are all these police officers standing on scene, he never brings it to any of these officers['] attention, that, [h]ey, here's what happened, you need to talk to the guy in the glasses, because he was grabbing at me. You know the guy you have in the back seat of the police car who's acting out, you need to talk to him. Counsel: I would object to any comments made of the failure of the defendant to actively make statements to the police. I think it goes, just what you said earlier, your Honor, of creating an issue, very severe issue.

And I understand there's no jury here. If there would have been a jury, my objection would have been much more forceful or much

20

more intense, but I trust in the [c]ourt to handle that, but I would ask the prosecutor to refrain. I'd ask the [c]ourt to remind the prosecutor that perhaps this is an improper place to build with statements, even though it's closing argument.

(Tr. 1011-1012).

[¶ 31] The court ruled:

The Fifth Amendment prevents the government from compelling testimony. What [counsel for the state] is describing is a person who might, depending on one's view of the evidence, have reason to believe he's going to be suspected of a crime, who doesn't, on his own, come forward to inform the government that he shouldn't be suspected and here's why, so I don't think it's unfair as to argument.

(Tr. 1012).

[¶ 32] We first point out that Hundley testified during the trial, and the testimony occurred during cross-examination and not the state's case-in-chief. When a defendant testifies at trial, the defendant has "'cast aside his cloak of silence.'" "Thus, use of prearrest silence as impeachment evidence is permitted because it furthers the truth-seeking process." "[N]either the Fifth Amendment right to be free from self-incrimination nor the Fourteenth Amendment right to due process is violated by the use of prearrest silence to impeach a criminal defendant's credibility."

[¶ 33] We also note that "in a bench trial, the court is presumed to have considered only the relevant, material, and competent evidence." Therefore, we may presume that the decision of the trial court was not impacted by the references. The trial court's explanations in denying Hundley's objections and in granting Hundley's objections during closing arguments supports the presumption that the trial court afforded due consideration to Hundley's position.

[¶ 34] Finally, we observe that pursuant to Crim.R. 52(A), "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded" "as harmless."

In order to find an error harmless, a reviewing court must be able to declare a belief that the error was harmless beyond a reasonable doubt. A reviewing court may overlook an error where the admissible evidence comprises "overwhelming" proof of a defendant's guilt. "Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal."

21

[¶ 35] Assuming arguendo that an error occurred, we do not find that the record supports that the allegedly "'unlawful testimony contributed to [Hundley's conviction].'"

[¶ 36] Hundley's first assigned error is without merit.

*Hundley I*, 2018 WL 4236678 at *3-5 (citations omitted).

Here, as the trial court and Eighth District noted, Mr. Hundley was not under arrest and had not been *Mirandized*, and thus, his due process rights were not implicated during the pre-arrest silence lying at the heart of Ground One. *Id.* at *4. The Eighth District also found that Mr. Hundley testified during the trial, and the challenged testimony occurred during cross-examination, not the state's case-in-chief. *Id.* at *5. It determined that the State used evidence for impeachment purposes, not as substantive evidence of guilt. *Id.* Thus, the Eighth District found Mr. Hundley had "cast aside his cloak of silence" and the State's use of prearrest silence was permissible. *Id.*, quoting *Jenkins*, 447 U.S. at 238.

The Eighth District's decision on Ground One was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was the decision based on an unreasonable determination of facts in light of the evidence presented in the trial court. Thus, it receives deference from this Court. Mr. Hundley has not shown that his conviction resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law or resulted in a decision that was based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). He failed to meet his burden of providing clear and convincing evidence to rebut the presumption that the state court correctly determined the factual issues. 28 U.S.C. § 2554(e)(1).

For these reasons, I recommend the District Court **DENY** any relief on Ground One of the petition.

## II.     Ground Two is not Cognizable in Federal Habeas Corpus Review.

Mr. Hundley argues in Ground Two that his conviction is against the manifest weight of the evidence. (ECF #1, PageID 6). But claims regarding the manifest weight of the evidence arise under state law and thus are not cognizable in federal habeas. *See, e.g.*, *Walker v. Engle*, 703 F.2d 959, 969 (6th Cir. 1983) (stating that Due Process Clause does not provide relief for defendants whose convictions are against the manifest weight of the evidence, but only for those convicted without sufficient proof to allow a finding of guilt beyond a reasonable doubt), *cert. denied*, 464 U.S. 951 (1983). However, in *Nash v. Eberlin*, 258 F. App'x 761, 765 n.4 (6th Cir. 2007), the Sixth Circuit liberally construed a *pro se* habeas petitioner's manifest-weight-of-the-evidence claim to be a sufficiency-of-the-evidence claim.

Because Mr. Hundley's petition is likewise uncounseled, I similarly construe his manifest-weight-of-the-evidence claim as a sufficiency-of-the-evidence claim and consider it in conjunction with Ground Three.

## III.     Grounds Two, Three, and Four are Procedurally Defaulted.

The State also argues Mr. Hundley's remaining grounds for relief are procedurally defaulted. (ECF #11, PageID 66-69). It argues the sufficiency-of-the-evidence claim in Ground Three (and, by extension, Ground Two) is defaulted as not fairly presented to the Ohio state courts. (*Id.* at PageID 66-67). And the ineffective assistance of counsel claim in Ground Four was likewise not fairly presented; furthermore, any argument as to ineffective assistance of appellate counsel was waived and procedurally defaulted and does not excuse procedural default of the

ineffective assistance of trial counsel claim. (*Id.* at PageID 68-69). Mr. Hundley did not file a Traverse and presents little argument against procedural default of his claims. (*See* ECF #1).

### A.      Grounds Two and Three: Sufficiency of the Evidence

In Grounds Two and Three, Mr. Hundley argues the State did not prove its burden of all the elements of murder with sufficient forensic evidence; he apparently bases this on forensic ballistic evidence from the shells from the 9mm Smith & Wesson and the .38 black revolver. (ECF #1, PageID 8, 13). But as Mr. Hundley concedes by checkmark on his petition, he did not raise this issue in his direct appeal. (*Id.* at PageID 8). My review of the record confirms this, although I note he did raise a manifest-weight-of-the-evidence claim. (*See* ECF 11-1, at PageID 106). He also states he raised the sufficiency-of-the-evidence claim in his postconviction motion (ECF #1, PageID 8), but this claim regarding the forensic ballistic evidence was couched as an ineffective assistance of counsel claim in his Rule 26(B) postconviction motion. (*See* ECF 11-1 at PageID 248-49).

Mr. Hundley has procedurally defaulted his sufficiency-of-the-evidence claim regarding forensic ballistic evidence because he has not fairly presented it to the state courts. For a claim to be "fairly presented" to the state courts, it must include the same factual and legal basis for the claim. *Fulcher*, 444 F.3d at 798. Furthermore, in Ohio, claims must be raised on direct appeal, or res judicata bars their litigation in later proceedings. *McGuire*, 738 F.3d at 751. Therefore, a petitioner may not raise claims in post-conviction proceedings that could have been raised on direct appeal. *Engle*, 456 U.S. at 125 n.28. If an Ohio petitioner does not raise an available claim on direct appeal, that claim becomes procedurally defaulted. *Id.* Moreover, Mr. Hundley did not preserve the sufficiency-of-the-evidence claim as a standalone constitutional claim by raising it as the basis for his ineffective assistance of counsel claim in his Rule 26(B) application. *See Norton v.*

*Sloan*, No. 1:16CV854, 2017 WL 525561, at *14 (N.D. Ohio Feb. 9, 2017) (quoting *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008) ("[A] Rule 26(B) application based on ineffective assistance cannot function to preserve the underlying substantive claim" because "the two claims are analytically distinct[.]")).

Consequently, Mr. Hundley did not fairly present or properly exhaust Grounds Two and Three and they are procedurally defaulted unless cause exists to excuse the default. *See, e.g., id.* (finding sufficiency-of-the-evidence claim procedurally defaulted where it was not raised on direct appeal to the Ohio Court of Appeals or the Ohio Supreme Court). I consider that issue later.

### B.     Ground Four: Ineffective Assistance of Counsel

In Ground Four, Mr. Hundley argues his counsel's deficient performance prejudiced his case, because counsel did not include impeachment evidence such as the police reports or subpoenaing key witnesses on his behalf. (ECF #1, PageID 9). He avers he fully raised this issue in his direct appeals. (*Id.* at PageID 9-11).

Although not entirely clear in his petition, it appears this claim is based on ineffective assistance of trial counsel. (*See id*). Mr. Hundley did raise ineffective assistance of trial counsel in his direct appeal to the Eighth District. (ECF #11-1 at PageID 106). But as presented there, the claim was based on trial counsel's improper handling of the State's witness, Marion Clark. (*Id.* at PageID 126-27). Considering this issue on direct appeal, the Eighth District affirmed the trial court's judgment. (*Id.* at PageID 171-90; *see also Hundley I*, 2018 WL 4236678). Mr. Hundley did not raise ineffective assistance of trial counsel in his appeal to the Supreme Court of Ohio. (*See* ECF 11-1, PageID 194).

25

As with Grounds Two and Three, Mr. Hundley did not fairly present his ineffective assistance of trial counsel claim to the Eighth District because it was not founded on the same factual basis as the current ground before this Court. *See, e.g., Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) (finding ineffective assistance of counsel claim not fairly presented where the claim "rest[ed] on a theory which is separate and distinct from the one previously considered and rejected in state court."). Likewise, even if it were presented on the same factual basis, Mr. Hundley procedurally defaulted Ground Four by not appealing to the Supreme Court of Ohio as part of his direct appeal. Mr. Hundley has further procedurally defaulted this claim by not fully raising the claim before the state courts while state-court remedies remained available. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006).

Therefore, Mr. Hundley has procedurally defaulted Ground Four, unless cause exists to excuse the default.

### C.     Excuse of Procedural Default for Grounds Two, Three, and Four

**Cause and Prejudice.** In his petition, Mr. Hundley states he did not appeal Ground Three due to ineffective assistance of appellate counsel. (ECF #1, PageID 8). He offers no argument to excuse procedural default of Ground Four. (*See id.* at PageID 9-10).

Mr. Hundley cannot rely on ineffective assistance of counsel to excuse his procedural default because his Sixth Amendment right to trial and appellate counsel claims are themselves procedurally defaulted, as described above. *See Williams v. Bagley*, 380 F.3d 932, 971 (6th Cir. 2004) (citing *State v. Murnahan*, 584 N.E.2d 1204, 1208 (Ohio 1992)); *Wickline v. Mitchell*, 319 F.3d 813, 823 (6th Cir. 2003); *Monzo v. Edwards*, 281 F.3d 568, 576-77 (6th Cir. 2002); *Enyart v.*

26

*Coleman*, 29 F. Supp. 3d 1059, 1097-98 (N.D. Ohio 2013); *Stojetz v. Ishee*, 389 F. Supp. 2d 858, 957 (S.D. Ohio 2005).

Mr. Hundley also cannot rely on ineffective assistance of appellate counsel as cause to excuse procedural default because he had no right to counsel on discretionary appeal to the Supreme Court of Ohio. The constitutional right to appointed counsel extends to the first appeal of right and no further. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Tolliver v. Sheets*, 594 F.3d 900, 929 (6th Cir. 2010); *see also State v. Buell*, 639 N.E.2d 110 (Ohio 1994).

Because Mr. Hundley has not successfully demonstrated cause to excuse the procedural default of his claims, I need not reach the issue of prejudice. Thus, Mr. Hundley has not overcome procedural default on this basis.

**Fundamental Miscarriage of Justice.** A petitioner may overcome procedural default by showing a fundamental miscarriage of justice will occur if the federal habeas court does not consider the petitioner's claims. *Coleman*, 501 U.S. at 750; *Murray*, 477 U.S. at 495. This question turns on whether the alleged constitutional violation resulted in the conviction of one who is "actually innocent." *Murray*, 477 U.S. at 495-96; *see also Schlup*, 513 U.S. at 327. A valid actual innocence claim must be supported by new reliable exculpatory evidence not presented at trial. *Schlup*, 513 U.S. at 324. In other words, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327.

Mr. Hundley does not assert his actual innocence excuses the procedural default. (*See* ECF #1). He offers no evidence of his actual innocence, nor does he make any developed argument that failing to consider his claims will yield a fundamental miscarriage of justice. A valid actual innocence claim must be supported by new reliable evidence, such as exculpatory scientific

evidence, trustworthy eyewitness accounts, or critical physical evidence, that was not presented at trial that is so strong a court cannot have confidence in the outcome of the petitioner's trial. *Schlup*, 513 U.S. at 324. Mr. Hundley offers none of that. Furthermore, mere legal insufficiency does not demonstrate a petitioner's actual innocence. *Bousley*, 523 U.S. at 623. Mr. Hundley has not overcome procedural default of Grounds Two, Three, and Four based on a properly-supported claim of actual innocence.

Therefore, I recommend the District Court **DISMISS** Grounds Two, Three, and Four as procedurally defaulted.

### CERTIFICATE OF APPEALABILITY

A habeas petitioner may not appeal the denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability (COA) and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court has determined a petitioner's constitutional claim to be without merit, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong" before receiving a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* A showing that the appeal would

succeed on the claim is not required to grant a certificate of appealability. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Mr. Hundley has not made a substantial showing that he was denied any constitutional right. Jurists of reason would not find it debatable whether the grounds for relief are valid claims of the denial of constitutional rights. Similarly, no procedural ruling appears to be in error. Therefore, I recommend the District Court not grant Mr. Hundley a certificate of appealability with respect to any ground.

CONCLUSION AND RECOMMENDATION

For the foregoing reasons, I recommend the District Court **DISMISS** the Petition as to Grounds Two, Three, and Four, and **DENY** the Petition as to Ground One. Finally, I recommend the District Court **DENY** a Certificate of Appealability.

Dated: January 4, 2024

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

Objections, Review, and Appeal

**Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge.** *See* **Fed. R. Civ. P. 72(b)(2);** *see also* **28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.**

**Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation.** *Berkshire v. Dahl*, **928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and**

Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).